UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

NADIA DABUL-MONTINI, on behalf of N.D.,

                  Plaintiff,

         V.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

                Defendant.
_____

**REPORT AND
RECOMMENDATION**

09-CV-966
(TJM/VEB)

## I. INTRODUCTION

In October of 2005, Plaintiff Nadia Dabul-Montini filed an application for Supplemental Security Income ("SSI") benefits under the Social Security Act on behalf of her son, N.D. ("Claimant"), alleging disability based upon learning impairments and developmental delays.[1]  The Commissioner of Social Security denied the application.

Plaintiff, through her attorneys, Empire Justice Center, Louise M. Tarantino, Esq., commenced this action on August 26, 2009, by filing a Complaint in the United States District Court for the Northern District of New York.  Plaintiff seeks judicial review of the Commissioner's denial of benefits pursuant to 42 U.S.C. §§ 405 (g) and 1383 (c)(3).

On July 22, 2010, the Honorable Norman A. Mordue, Chief United States District Judge, referred this case to the undersigned for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(A) and (B). (Docket No. 16).

---

[1]Claimant is a minor.  Thus, in accordance with Rule 5.2 (a) of the Federal Rules of Civil Procedure, he will be referred to as "Claimant" in this Report and Recommendation.

## II. BACKGROUND

The relevant procedural history may be summarized as follows: Plaintiff is the mother of Claimant, a minor child.  On October 17, 2005, Plaintiff filed an application for SSI benefits on Claimant's behalf, alleging disability beginning on July 23, 2004. (T at 57, 63).[2]  The application was denied initially on February 24, 2006. (T at 36-38).

Plaintiff filed a timely request for a hearing before an Administrative Law Judge ("ALJ").  On February 28, 2008, a hearing was held in Syracuse, New York, before ALJ Carl Stephan.  (T at 619-651).  Plaintiff appeared with Claimant, but without counsel. Plaintiff and Claimant testified. (T at 619, 621-23).

On March 28, 2008, ALJ Stephan issued a written decision denying the application for benefits and finding that Claimant was not disabled within the meaning of the Social Security Act.  (T at 19-33).   The ALJ's decision became the Commissioner's final decision on June 29, 2009, when the Appeals Council denied Plaintiff's request for review.  (T at 4-8).

On August 26, 2009, Plaintiff, acting on Claimant's behalf, commenced this action by and through her attorneys, by filing a Complaint. (Docket No. 1).  The Commissioner interposed an Answer on November 10, 2009. (Docket No. 8).  Plaintiff filed a supporting Brief on February 12, 2010.  (Docket No. 12).  The Commissioner filed a Brief in opposition on April 9, 2010. (Docket No. 12).

Pursuant to General Order No. 18, as issued by the Chief District Judge of the

---

[2]Citations to "T" refer to the Administrative Transcript.  (Docket No. 7)

Northern District of New York, this Court "will treat the proceeding as if both parties had accompanied their briefs with a motion for judgment on the pleadings . . . ."

For the reasons set forth below, this Court recommends that the Commissioner's motion be denied, Plaintiff's motion be granted, and this case be remanded for the calculation of benefits.

## III. DISCUSSION

**A.    Legal Standard**

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir.1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir.1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); see Grey v. Heckler, 721 F.2d 41, 46 (2d Cir.1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir.1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971). Where evidence is deemed susceptible to more than

one rational interpretation, the Commissioner's conclusion must be upheld. See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir.1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams v. Bowen, 859 F.2d 255, 258 (2d Cir.1988).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F.Supp. 147, 153 (S.D.N.Y.1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir.1984).

An individual under the age of eighteen (18) is disabled, and thus eligible for SSI benefits, if he or she has a medically determinable physical or mental impairment that results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c(a)(3)(C)(i). However, that definitional provision excludes from coverage any "individual under the age of [eighteen] who engages in substantial gainful activity...." 42 U.S.C. § 1382c(a)(3)(C)(ii).

By regulation, the agency has prescribed a three-step evaluative process to be employed in determining whether a child can meet the statutory definition of disability. 20

4

C.F.R. § 416.924; Kittles v. Barnhart, 245 F.Supp.2d 479, 487-88 (E.D.N.Y.2003); Ramos

v. Barnhart, 02 Civ.3127, 2003 WL 21032012, at *7 (S.D.N.Y. May 6, 2003).

The first step of the test, which bears some similarity to the familiar five-step analysis

employed in adult disability cases, requires a determination of whether the child has

engaged in substantial gainful activity. 20 C .F.R. § 416.924(b); Kittles, 245 F.Supp.2d at

488. If so, then both statutorily and by regulation the child is ineligible for SSI benefits. 42

U.S.C. § 1382c(a)(3)(C)(ii); 20 C.F.R. § 416.924(b).

If the claimant has not engaged in substantial gainful activity, the second step of the

test requires an examination as to whether the child suffers from one or more medically

determinable impairments that, either singly or in combination, are properly regarded as

severe, in that they cause more than a minimal functional limitation. 20 C.F.R. §

416.924(c); Kittles, 245 F.Supp.2d at 488; Ramos, 2003 WL 21032012, at *7.

If the existence of a severe impairment is discerned, the agency must then

determine, at the third step, whether the impairment meets or equals a presumptively

disabling condition identified in the listing of impairments set forth under 20 C.F.R. Pt. 404,

Subpt. P., App. 1 (the "Listings"). Id. Equivalence to a listing can be either medical or

functional. 20 C.F.R. § 416.924(d); Kittles, 245 F.Supp.2d at 488; Ramos, 2003 WL

21032012, at *7. If an impairment is found to meet, or qualify as medically or functionally

equivalent to, a listed disability and the twelve-month durational requirement is satisfied,

the claimant will be deemed disabled. 20 C.F.R. § 416.924(d)(1); Ramos, 2003 WL

21032012, at *8.

Analysis of functionality is informed by consideration of how a claimant functions in

six main areas, commonly referred to as "domains." 20 C.F.R. § 416.926a(b)(1); Ramos,

2003 WL 21032012, at *8. The domains are described as "broad areas of functioning intended to capture all of what a child can or cannot do." 20 C.F.R. § 416.926a(b)(1). Those domains include: (i) acquiring and using information; (ii) attending and completing tasks; (iii) interacting and relating with others; (iv) moving about and manipulating objects; (v) caring for oneself; and (vi) health and physical well-being. 20 C.F.R. § 416.926a(b)(1).

Functional equivalence is established in the event of a finding of an "extreme" limitation, meaning "more than marked," in a single domain. 20 C.F.R. § 416.926a(a); Ramos, 2003 WL 21032012, at *8. An "extreme limitation" is an impairment which "interferes very seriously with [the claimant's] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(3)(I) (emphasis added).

Alternatively, a finding of disability is warranted if a "marked" limitation is found in any two of the listed domains. 20 C.F.R. § 416.926a(a); Ramos, 2003 WL 21032012, at *8. A "marked limitation" exists when the impairment "interferes seriously with [the claimant's] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(2)(I). "A marked limitation may arise when several activities or functions are impaired, or even when only one is impaired, as long as the degree of limitation is such as to interfere seriously with the ability to function (based upon age-appropriate expectations) independently, appropriately, effectively, and on a sustained basis." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 112.00(C).

## B.   Analysis

### 1.   Commissioner's Decision

The ALJ noted that Claimant was born on April 2, 2000, and was thus a

"preschooler" as defined pursuant to 20 CFR § 416.926a(g)(2) on October 17, 2005, the date the application for benefits was filed, and was a "school-age child" on March 28, 2008, the date of the ALJ's decision.  The ALJ found that Claimant had not engaged in substantial gainful activity at any time relevant to the decision. He further determined that Claimant suffers from the following impairments considered severe under 20 CFR § 416.924 (c): asthma, learning delays in reading and math, and speech and language delays.  (T at 22).

However, the ALJ found that Claimant did not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix I (the "Listings").  In addition, the ALJ concluded that Claimant did not have an impairment or combination of impairments that functionally equals an impairment set forth in the Listings. (T at 22).

As to the six domains of function: the ALJ determined that Claimant had: (1) less than marked limitation in acquiring and using information; (2) less than marked limitation with regard to attending and completing tasks; (3) no limitation in interacting and relating to others; (4) no limitation in moving about and manipulating objects; (5) no more than a slight limitation in the ability to care for himself; and (6) less than a marked limitation with regard to health and physical well-being. (T at 28-32).

In light of the foregoing, the ALJ found that Claimant had not been disabled, as defined under the Act, since the date the application was filed.  (T at 33).  As noted above, the ALJ's decision became the Commissioner's final decision when the Appeals Council denied Plaintiff's request for review.  (T at 4-7).

### 2.    Plaintiff's Arguments

Plaintiff contends that the Commissioner's decision should be reversed.  In support

7

of this position, she offers two (2) principal arguments.  First, Plaintiff contends that the ALJ erred by concluding that Claimant's impairment did not functionally equal an impairment set forth in the Listings.  Specifically, Plaintiff challenges the ALJ's findings with respect to Claimant's limitations as to acquiring and using information and attending to and completing tasks.  Second, Plaintiff contends that the ALJ improperly failed to consider the effect of a structured setting on Claimant's limitations.  Each argument will be addressed in turn.

### a.    Limitations as to Acquiring and Using Information

This domain considers the child's ability to acquire or learn information and how well the child uses the information she has learned.  20 C.F.R. § 416.926a(g).  The pertinent regulations provide that for a pre-school child (age 3 to attainment of age 6), the ability to acquire and use information should manifest itself in the following abilities: listening to stories, rhyming words, matching letters, counting, sorting shapes, and building with blocks, painting, coloring, copying shapes, using scissors, using words to ask questions, giving answers, following directions, describing things, explaining oneself, and telling stories.  20 C.F.R. § 416.926a(g)(2)(iii).

A school-age child (*i.e.* at least six, younger than twelve) should be able to read, write, perform math, and discuss history and science.  The child should be able to demonstrate these skills both in academic situations and in daily living.  20 C.F.R. § 416.926a(g)(2)(iv).

The Regulations provide examples of limited functioning with respect to this domain. For example, a child might have limited functioning if he or she does not demonstrate

understanding of words about space, size, or time; cannot rhyme words or the sounds in words; has difficulty recalling information learned in school the previous day; has difficulty solving mathematical problems; and/or talks in short, simple sentences and has difficulty explaining what he or she means.  20 C.F.R. § 416.926a(g)(3).

Plaintiff argues that Claimant has a marked limitation with respect to this domain. In this regard, Plaintiff points to the results of an IQ test performed by consultative examiner Kerry Brand, which indicated a full scale IQ of 80, a result described by Dr. Brand as "in the borderline range of intelligence." (T at 273).  Further, the ALJ notes that Dr. Gina Cosgrove, in a diagnostic evaluation, assessed a full scale IQ of 84 and opined that Claimant's intellectual skills were in the "low average range." (T at 591).

Carol Leitze, Claimant's special education teacher, completed a teacher questionnaire in November of 2005.  With regard to the domain of acquiring and using information, Ms. Leitze assessed Claimant as having a "serious problem" comprehending oral instructions, understanding school and content vocabulary, providing organized oral explanations and adequate descriptions, learning new material, recalling and applying previously learned material, and applying problem-solving skills in class discussions.  (T at 168).  She indicated that Claimant had an "obvious problem" understanding and participating in class discussions and opined that he needed adult support to follow directions and to complete all academic tasks. (T at 168).

Ms. Leitze completed another questionnaire in January of 2008.  She again noted serious problems with respect to comprehending oral instructions, understanding school and content vocabulary, providing organized oral explanations and adequate descriptions, learning new material, recalling and applying previously learned material, and applying

9

problem-solving skills in class discussions. (T at 515). In addition, Ms. Leitze indicated serious problems in reading and comprehending written material and found obvious problems with respect to comprehending and doing math problems, understanding and participating in class discussions, and expressing ideas in written form. (T at 515).

Rosemary Spataro, one of Claimant's classroom teachers, completed a questionnaire in February of 2008. Ms. Spataro opined that Claimant had an "obvious problem" with regard to comprehending oral instructions and understanding and participating in class discussions. (T at 507). She found serious problems in the areas of understanding school and content vocabulary, reading and comprehending written material, comprehending and doing math problems, providing organized oral explanations and adequate descriptions, expressing ideas in written form, learning new material, recalling and applying previously learned material, and applying problem-solving skills in class discussions. (T at 507).

Plaintiff also points to several test scores showing limitations in this domain. Specifically, in May of 2004, Claimant was scored on the Preschool Language Scale-4 ("PLS-4") as part of a multidisciplinary evaluation. Claimant was found to have a score of 67 (the average range is 85-115), which the evaluators noted was "at the 1st percentile in comparison to his peers" and demonstrated a "significant delay in the areas of reception language development." (T at 125-26). Claimant's January 2005 PLS-4 score was 69, in the 2nd percentile. (T at 121).

Deborah A. Abba, Claimant's speech and language therapist, noted in a January 2006 report that Claimant had well below average scores with regard to several subtests and demonstrated "scattered speech and language skills." (T at 398). Ms. Abba made

similar findings in November of 2007. (T at 494-95).

The ALJ concluded that Claimant had a less than marked limitation with regard to acquiring and using information. (T at 28). As discussed above, a "marked limitation" exists when the impairment "interferes seriously with [the claimant's] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(2)(I). "A marked limitation may arise when several activities or functions are impaired, or even when only one is impaired, as long as the degree of limitation is such as to interfere seriously with the ability to function (based upon age-appropriate expectations) independently, appropriately, effectively, and on a sustained basis." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 112.00(C).

This Court finds that the ALJ's conclusion is not supported by substantial evidence. The ALJ's discussion with respect to this domain is limited to a single paragraph, in which he notes that Claimant's IQ scores are "normal," indicates that Claimant's delays are being appropriately addressed through an Individualized Education Program ("IEP"), selectively cites certain of Claimant's test scores, and references a finding from Claimant's speech and language therapist to the effect that Claimant continues to demonstrate overall growth. The ALJ's brief discussion is flawed in the following respects:

First, the ALJ, who is not a medical professional, does not explain what is meant by a "normal" IQ score. The consultative examiners found Claimant's IQ to be in the "borderline range of intelligence" and "low average range." (T at 273, 591). Although the scores may not be low enough to meet the clinical definition of mental retardation, this does not mean that Claimant has a less than marked impairment with respect to acquiring and using information. "[T]his domain considers more than just assessments of cognitive ability as measured by intelligence tests, academic achievement instruments, or grades in

11

school." SSR 09-3p.  "A child with low intelligence can have an impairment of cognitive function. A child of normal intelligence can also be cognitively impaired if some condition other than a low IQ severely affects the child's ability to progress in the skills involved in reading, writing, and arithmetic." Carballo ex rel. Cortes v. Apfel, 34 F.Supp.2d 208, 218 (S.D.N.Y. 1999); see also Winnik v. Chater, No. 95 CIV. 0695,1998 WL 151041, at *3 (S.D.N.Y. Apr. 1, 1998)("Therefore, to the extent that the record suggests that Samantha suffered some cognitive impairment, her near-average IQ is of little consequence."); McClain v. Apfel, No. 99 Civ. 3236, 2001 WL 66403, at *15 (S.D.N.Y. Jan. 26, 2001)(noting that "marked impairments in the area of cognition and communication may exist where a child is of normal intelligence but suffers from severe learning disabilities").

Second, even assuming *arguendo* that Claimant's school district is "appropriately" addressing his learning delays through an IEP, that does not mean that Claimant's limitation in this domain is less than marked.  Indeed, Claimant's IEPs strongly suggest that Claimant has a marked limitation in this domain.  Claimant's IEP for the 2005-2006 school year noted moderate delay in receptive language and severe delay in expressive language skills. (T at 400).  His progress was noted to be "slow." (T at 400).  The assessment was that Claimant needed a "[h]ighly structured language setting." (T at 401).

Claimant's 2006-2007 IEP provided for a special class integrated literacy program, continued speech/language therapy (with participation in a summer literacy program to prevent regression), and a 1:1 teaching assistant. (T at 367).  The IEP indicated that Claimant, who was nearly six (6) years old at the time of the report, could not write his name or independently write letters, could not consistently recognize or produce rhyming words, and could not consistently identify colors or shapes. (T at 369).  He "often needs to

12

have directions repeated and clarified." (T at 370).

The IEP for the 2007-2008 school year provided for special education services with regard to math and reading in a room with a 5:1 student-teacher ratio, speech/language therapy, a teaching assistant, and participation in a summer literacy program. (T at 287-88). The IEP noted that Claimant's "multiple disabilities affect all academic areas." (T at 289). Although his speech/language skills showed some improvement from previous years, Claimant's expressive and receptive vocabulary was described as "low average," he needed adult support for most academic tasks, and could not answer written comprehension questions. (T at 290).

In making passing reference to the fact that Claimant's math and reading delays are being "appropriately addressed" through his IEP, the ALJ made no mention of the significant and numerous limitations set forth in the actual documents.

Third, the ALJ's reference to certain test scores achieved by Claimant is likewise unavailing. As noted above, a proper evaluation of this domain requires more than a simple reference to intelligence and aptitude tests, let alone selective and incomplete references. SSR 09-3. For example, the ALJ noted that Claimant scored a 92 on an expressive vocabulary test, which was within the normal range, and was noted to have average articulation skills based upon the Goldman Fristow Test of Articulation-2. (T at 28). However, as discussed above, Claimant's PLS-4 scores were found to be in the 1st or 2nd percentile compared to his peers (T at 121, 125-26), and his verbal reasoning skills (based on the Stanford-Binet Intelligence Scale IV) were noted to be "significantly delayed." (T at 124).

Moreover, although he referenced the findings of Ms. Abba (Claimant's speech and

language therapist) in his general discussion of the evidence (T at 25), the ALJ made no attempt to reconcile Ms. Abba's dramatic findings with his "less than marked limitation" assessment.   Ms. Abba saw Claimant five (5) times weekly for speech and language services during the school year and was thus well-positioned to assess his limitations.   In her November 2006 report, referenced above, Ms. Abba found that Claimant's speech and language skills were "scattered" and "well below average," with receptive language skills in the 19th percentile and expressive language skills in the 16th percentile. (T at 398).

A November 2007 report indicated that Ms. Abba saw Claimant four (4) times a week in a group setting.  She indicated that he needed directions and information repeated and simplified. (T at 493).   Although Claimant was making "good progress," the progress was "slow" and his "receptive vocabulary skills when tested using a standardized assessment [were] weak." (T at 493).   In over half of the subtests administered by Ms. Abba, Claimant fell below the 25th percentile.   In particular, he was noted to be at a percentile less than 1% for concepts and following directions, 16th percentile for understanding spoken paragraphs, and 6th percentile for receptive language skills. (T at 494).

Likewise, while the ALJ points to Ms. Abba's indication that Claimant demonstrated growth, he ignores Ms. Abba's numerous other findings and assessments, which clearly indicate continuing and significant limitations, notwithstanding the progress being made (which she described as "slow" in any event).

The ALJ was not at liberty to simply "pick and choose" the test scores that supported his finding, while ignoring the test scores and assessments that supported Plaintiff's position, particularly because some of those assessments came from a speech and

14

language therapist who had almost daily contact with the Claimant.  See Sutherland v. Barnhart, 322 F.Supp.2d 282, 289 (E.D.N.Y.2004) (citing Lopez v. Sec'y of Dept. of Health & Human Servs., 728 F.2d 148, 150-151 (2d Cir.1984) ("It is not proper for the ALJ to simply pick and choose from the transcript only such evidence that supports his determination, without affording consideration to evidence supporting the plaintiff's claims.").

Lastly, the ALJ erred by failing to give consideration to the questionnaires completed by Claimant's special education and general education teachers.  The ALJ notes in passing that Ms. Spataro, Claimant's general education teacher, reported that Claimant had "problems acquiring and using information." (T at 25).  In fact, Ms. Spataro reported "serious" problems (assigning a rating of 4 out of 5, with 5 being the most serious), with regard to understanding school and content vocabulary, reading and comprehending written material, comprehending and doing math problems, providing organized oral explanations and adequate descriptions, expressing ideas in written form, learning new material, recalling and applying previously learned material, and applying problem-solving skills in class discussions. (T at 507).  These findings are clearly not supportive of the ALJ's assessment of a less than marked limitation in this domain, but the ALJ makes no effort to reconcile his findings with Ms. Spataro's.

The ALJ likewise makes reference to a questionnaire completed in January 2008 by Ms. Leitze, Claimant's special education teacher.  Ms. Leitze worked with Claimant every school day. (T at 167).  The ALJ suggests simply that Ms. Leitze reported "a few problems across multiple domains." (T at 26).  In fact, Ms. Leitze reported numerous serious problems (assigning a 4 out of 5 rating) with regard to comprehending oral

15

instructions, understanding school and content vocabulary, providing organized oral explanations and adequate descriptions, learning new material, recalling and applying previously learned material, reading and comprehending written material, and applying problem-solving skills in class discussions. (T at 515).  When asked whether Claimant needed "extra help" or "an unusual degree of structure or support," Ms. Leitze underlined both phrases, indicating that Claimant needed both. (T at 515).  Again, these findings are not remotely supportive of the ALJ's assessment (in fact, they substantially undermine it) and his suggestion that the special education teacher found "few problems" is flatly contradicted by the record.

Accordingly, this Court finds that the ALJ's conclusion that Claimant had a less than marked limitation with regard to the domain of acquiring and using information is not supported by substantial evidence.

### b.    Attending to and Completing Tasks

In this domain, the Commissioner considers the child's ability "to focus and maintain . . . attention," and how well he can "begin, carry through, and finish . . . activities, including the pace at which [he] perform[s] activities and the ease with which [he] change[s] them." 20 C.F.R. § 416.926a(h).

A preschooler is expected to pay attention when spoken to directly, sustain attention to play and learning activities, and concentrate on activities like putting puzzles together or completing art projects, focus long enough to do many more things independently, such as getting clothes together and dressing, feeding, or putting away toys. A preschooler should usually be able to wait his or her turn and to change activity when a caregiver or teacher says it is time to do something else.20 C.F.R. §416.926a (h)(2)(iii).

A school-age child is expected to focus attention in a variety of situations in order to follow directions, remember and organize school materials, and complete classroom and homework assignments. The child should be able to concentrate on details and not make careless mistakes in work (beyond what would be expected in other children of like age who do not have impairments). The child should be able to change activities or routines without distracting himself/herself or others, and stay on task and in place when appropriate. The child should be able to sustain attention well enough to participate in group sports, read independently, and complete family chores. The child should also be able to complete a transition task (*e.g.*, be ready for the school bus, change clothes after gym, change classrooms) without extra reminders and accommodation. 20 C.F.R. §416.926a (h)(2)(iv).

The Regulations provide examples of limited functioning with respect to this domain. For example, a child might have limited functioning if he or she is easily startled, distracted, or overreactive to sounds, sights, movements, or touch; slow to focus on, or fail to complete activities of interest; repeatedly becomes sidetracked from activities or frequently interrupts others; becomes easily frustrated and gives up on tasks; and requires extra supervision to remain engaged in an activity. 20 C.F.R. §416.926a (h)(3).

Plaintiff contends that Claimant has a marked limitation as to this domain.  She points to Ms. Leitze's November 2005 questionnaire, in which she indicated that Claimant had a serious problem (rated as a 4 out of 5) focusing long enough to finish assigned tasks or activities, refocusing to task when necessary, carrying out multi-step instructions, organizing his own things or school materials, and working at a reasonable pace/finishing on time. (T at 169).  Ms. Leitze also noted that Claimant required adult support to follow

17

directions and to complete all tasks. (T at 169).

In her January 2008 questionnaire, Ms. Leitze noted a serious problem carrying out multi-step instructions, organizing his own things and school materials, and working at a reasonable pace/finishing on time. (T at 516).  She also indicated an obvious problem (3 out of 5) in several other areas related to this domain. (T at 516).  Ms. Spataro also noted several obvious and serious problems in this domain, which imposed limitations on a daily basis. (T at 508).  She indicated that all classroom assignments and homework were modified due to Claimant's limitations. (T at 508).

The ALJ found that Claimant has a less than marked limitation with regard to this domain.  In support of this finding, the ALJ offers only two (2) sentences.  First, he acknowledges that Claimant "apparently" has "some difficulty" staying on task and receives special education services to assist in this area. (T at 29).  However, the ALJ concluded that Claimant had a less than marked limitation because he "completes all homework as assigned inside and outside the classroom." (T at 29).  This assessment is wholly inadequate.  As noted above, the homework assignments are modified to address Claimant's limitations, rendering the evidence that he is able to complete the assignments much less persuasive with regard to the extent of his limitation.

Moreover, the ALJ made no attempt whatever to address the findings of Claimant's teachers, who interact with Claimant every school day, to the effect that Claimant has numerous, serious problems in this domain.  The ALJ also did not make any effort to reconcile his findings with several other pieces of evidence concerning Claimant's attention difficulties.  For example, a June 2004 report indicated that Claimant "required a high level of verbal prompts to follow thru with task expectations" (T at 165); the 2005-2006 IEP

described Claimant's attention as "limited" and noted that he was "highly distractible" (T at 177); the 2007-2008 IEP indicated that Claimant's "multiple disabilities" affected his "attention and ability to follow directions." (T at 299).   Having failed to address and/or reconcile these findings, the ALJ's conclusory reference to the fact that Claimant completes his homework (which, in any event, is modified) is plainly inadequate.

Accordingly, this Court finds that the ALJ's finding that Claimant had a less than marked limitation with respect to the domain of attending to and completing tasks is not supported by substantial evidence.

### c.    Effect of Structured Setting

The "Commissioner's regulations require the ALJ to consider the effects of a structured or highly supportive setting . . . on the claimant's functioning and, if the claimant's symptoms or signs are controlled or reduced by the structured environment, the ALJ is required to consider the claimant's functioning outside of the highly structured setting." Smith v. Massanari, No. 00-CV-0402, 2002 WL 34242375, at *6 (W.D.N.Y. Mar. 17, 2002) (citing 20 C.F.R. § 416.924c (a),(d)).   In other words, the ALJ is obligated to consider the claimant's level of functioning outside of the structured educational environment.   See id.; see also Straw v. Apfel, No. 98 Civ. 5089, 2001 WL 406184, at *6 (S.D.N.Y. Apr. 20, 2001).

With regard to both of the domains discussed above, the ALJ based his decision in large part upon the fact that Claimant was receiving special education services.   This reliance was misplaced.   First, as discussed above, the fact that Claimant receives special education services does not mean that he is not disabled.   Second, the ALJ did not adequately consider Claimant's level of functioning outside of the structured educational

environment.  Plaintiff testified that Claimant, who was nearly eight (8) years old at the time

of the hearing, had difficulties dressing himself and maintaining personal hygiene (T at 634-

36).  Although he referenced Plaintiff's testimony during his background discussion, the ALJ

did not attempt to reconcile the testimony with his assessments as to the domains.

Moreover, the ALJ did not ask Plaintiff (who appeared without an attorney) sufficient

questions about Claimant's level of functioning outside of school and his discussion of the

domains referenced above contains no reference to Claimant's performance outside of that

highly structured setting.

Lastly, as discussed above, the school records are indicative of significantly greater

limitations than those assessed by the ALJ.  The errors of the ALJ in this regard become

even more obvious when consideration is given to the fact that those assessments rated

Claimant's performance inside the highly structured school setting and, thus, quite possibly

understated the true extent of his limitations.

### 3.   Remand for Calculation of Benefits

In this Circuit, a court may remand solely for calculation of benefits when it finds

there is "no apparent basis to conclude that a more complete record might support the

Commissioner's decision." Butts v. Barnhart, 388 F.3d 377, 385-86 (2d Cir.2004) (quoting

Rosa v. Callahan, 168 F.3d 72, 83 (2d Cir.1999)); see also Johnson v. Bowen, 817 F.2d

983, 986 (2d Cir.1987) (remand for calculation of benefits appropriate where record

"compel[s] but one conclusion under the ... substantial evidence standard."); Parker v.

Harris, 626 F.2d 225, 235 (2d Cir.1980) (remand solely for calculation of benefits

appropriate where "the record provides persuasive proof of disability and a remand for

further evidentiary proceedings would serve no purpose").

20

For the reasons stated above, this Court finds that the record contains persuasive proof of Claimant's marked limitation of functioning in at least two of the domains identified under 20 C.F.R. § 416.926a.

Plaintiff's application for benefits on behalf of Claimant has been pending for nearly five (5) years.  Delay "is harmful for any litigant, but particularly in connection with benefits for children, which are not to replace lost income, but to enable low-income families to afford special education, medical treatment, physical rehabilitation, early intervention services, and personal needs assistance for the child." Nieves ex rel. Nieves v. Barnhart, No. 02 Civ.9207, 2004 WL 2569488, at *10 (S.D.N.Y. November 12, 2004) (citing Maldonado v. Apfel, 55 F.Supp.2d 296, 297-98 (S.D.N.Y.1999)). In fact, "[t]he purpose of providing SSI benefits to children is to assist them while they are children." Molina v. Barnhart, No. 00 CIV. 9522, 2002 WL 377529, at *10 (S.D.N.Y. March 11, 2002).

This Court concludes that remand to the Commissioner for further proceedings would serve no productive purpose, would not produce findings contrary to this Court's conclusions, and would only cause further delay.  Accordingly, it is recommended that a remand be ordered solely for the calculation of benefits.

## IV. CONCLUSION

For the foregoing reasons, it is respectfully recommended that Plaintiff's Motion for Judgment on the Pleadings be GRANTED, that the Commissioner's Motion for Judgment on the Pleadings be DENIED, that the decision of the Commissioner be reversed, and that the case be remanded to the Commissioner for calculation of benefits.

Respectfully submitted,

_____

Victor E. Bianchini
United States Magistrate Judge


Dated:   July 30, 2010

      Syracuse, New York


## V. ORDERS


Pursuant to 28 USC §636(b)(1), it is hereby ordered that this Report & Recommendation be filed with the Clerk of the Court and that the Clerk shall send a copy of the Report & Recommendation to all parties.

**ANY OBJECTIONS to this Report & Recommendation must be filed with the Clerk of this Court within ten(10) days after receipt of a copy of this Report & Recommendation in accordance with 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, as well as NDNY Local Rule 72.1(c).**

**FAILURE TO FILE OBJECTIONS TO THIS REPORT & RECOMMENDATION**

**WITHIN THE SPECIFIED TIME, OR TO REQUEST AN EXTENSION OF TIME TO FILE OBJECTIONS, WAIVES THE RIGHT TO APPEAL ANY SUBSEQUENT ORDER BY THE DISTRICT COURT ADOPTING THE RECOMMENDATIONS CONTAINED HEREIN.** Thomas v. Arn, 474 U.S. 140 (1985); F.D.I.C. v. Hillcrest Associates, 66 F.3d 566 (2d. Cir. 1995); Wesolak v. Canadair Ltd., 838 F.2d 55 (2d Cir. 1988); see also 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, and NDNY Local Rule 72.1(c).

Please also note that the District Court, on *de novo* review, will ordinarily refuse to consider arguments, case law and/or evidentiary material *which could have been, but were not*, presented to the Magistrate Judge in the first instance. See Patterson-Leitch Co. Inc. v. Massachusetts Municipal Wholesale Electric Co., 840 F.2d 985 (1st Cir. 1988).

SO ORDERED.

July 30, 2010

Victor E. Bianchini
United States Magistrate Judge